UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALMA GARCIA SOLORIO,<br><br>Plaintiff,<br><br>v.<br><br>LORETTA LYNCH, U.S. DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>Defendants. | No. 1:15-cv-01123-DAD-EPG<br><br>ORDER GRANTING MOTION TO DISMISS<br><br>(Doc. No. 17) |

This matter is before the court on defendants' motion to dismiss the complaint. (Doc. No. 17.) A hearing on the motion was held on June 21, 2016. Assistant U.S. Attorney Audrey Hemesath appeared on behalf of defendants. Attorney Frank Sprouls appeared on behalf of plaintiff. The court has considered the parties' briefs and oral arguments, and for the reasons set forth below, will grant defendants' motion.

## BACKGROUND

**A.     Statutory and Regulatory Overview**

Pursuant to the Immigration and Nationality Act ("INA"), United States citizens and lawful permanent residents may file an I-130 visa petition with U.S. Citizenship and Immigration Services ("USCIS") on behalf of a family member to obtain lawful permanent residency in the United States. *See* 8 U.S.C. §§ 1153, 1154. The number of family-sponsored immigrants,

excluding immediate relatives, is limited to approximately 480,000 per fiscal year.  *See* 8 U.S.C. § 1151(c)(1)(A).  The INA further divides these family-sponsored immigration visas into a series of preference categories depending on the status of both the petitioner and the intended beneficiary: "F1" for unmarried sons and daughters of U.S. citizens, "F2A" for spouses and children of lawful permanent residents, "F2B" for unmarried sons and daughters of lawful permanent residents, "F3" for married sons and daughters of U.S. citizens, and "F4" for brothers and sisters of U.S. citizens.  *See* 8 U.S.C. § 1153(a).  If the I-130 petition establishes any of these qualifying relationships, the petition is approved and the beneficiary is placed "in line" in the appropriate preference category, based on the "priority date."[1]  Because annual demand exceeds the availability of family-sponsored visas, qualifying beneficiaries may wait several years before a visa is available.  In addition, the INA imposes limits on the number of immigration visas made available to beneficiaries of a single country per fiscal year.  *See* 8 U.S.C. § 1152(a).  Every month, the U.S. Department of State, in coordination with USCIS, publishes a visa bulletin listing "cut-off dates" based on family-sponsored visa preference category and country of origin.[2]  If the listed cut-off date is later than a beneficiary's priority date, the priority date is "current" and an immigration visa is available to the beneficiary.

On July 27, 2006, the Adam Walsh Child Protection and Safety Act ("AWA") was signed into law, with a stated purpose "to protect the public from sex offenders and offenders against children."  Pub. L. 109-248; 42 U.S.C. § 16901.  Among other aspects, the AWA amended sections of the INA to preclude any U.S. citizen convicted of "a specified offense against a minor" from petitioning for a family-sponsored visa, "unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the alien with respect to whom a petition . . . is filed."  8 U.S.C. § 1154(a)(1)(A)(viii)(I).  The term "specified offense against a minor" is defined by 42 U.S.C. § 16911.  *Id.*

---

[1] The priority date refers to "the filing date of the approved petition that accorded preference status."  22 C.F.R. § 42.53.

[2] *See, e.g.*, U.S. Dep't of State, Visa Bulletin, *available at* https://travel.state.gov/content/dam/visas/Bulletins/visabulletin_July2016.pdf.

On February 8, 2007, the Associate Director of USCIS issued guidance regarding the implementation of the AWA's amendments to the INA.  Interoffice Memorandum from Michael Aytes, Guidance for Adjudication of Family-Based Petitions and I-129F Petition for Alien Fiancé(e) under the Adam Walsh Child Protection and Safety Act of 2006 ("Aytes Memo").[3]  The Aytes Memo notes that under existing law, USCIS may revoke an approved I-130 petition for good and sufficient cause.  Aytes Memo at 3 (citing 8 U.S.C. § 1155).  If USCIS determines that a U.S. citizen petitioner has been convicted of a "specified offense against a minor," it will make a discretionary no-risk determination pursuant to § 1154(a)(1)(A)(viii)(I).  *Id.* at 5.  Where none of the intended beneficiaries of an I-130 petition are children,

> the adjudicator must closely examine the petitioner's specified offense and other past criminal acts to determine whether the petitioner poses *any risk to the safety or well-being of the adult beneficiary*.  For example, past acts of spousal abuse or other acts of violence must certainly be considered.  The fact that a petitioner's past criminal acts may have been perpetrated only against children or that the petitioner and beneficiary will not be residing either in the same household or within close proximity to one another may not, in and of themselves, be sufficient to convince USCIS that the petitioner poses no risk to the adult beneficiary.  *The burden is upon the petitioner to prove, beyond any reasonable doubt, that he or she poses no risk to the intended adult beneficiary.*

*Id.* at 7 (emphases added).

**B.     Factual Background[4]**

On July 22, 1992, plaintiff Alma Garcia Solorio's father, Rafael Garcia-Valdez, a lawful permanent resident, petitioned for family-sponsored visas on behalf of his spouse and his two then-minor children.  (Doc. No. 1-1, Ex. B; ROP at 118.)  On August 26, 1992, Garcia-Valdez's petition was approved.  (Doc. No. 1-1, Ex. B.)  Garcia-Valdez's beneficiaries, including plaintiff Alma Garcia Solorio, fell within the F2A preference category.

/////

---

[3] https://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Static_Files_Memoranda/adamwalshact020807.pdf.

[4] The background that follows is derived primarily from the allegations in the complaint (Doc. No. 1) and the record of proceedings (Doc Nos. 17-1, 17-2) ("ROP").

On December 19, 1996, after plaintiff Garcia Solorio turned 21 years of age, Garcia-Valdez submitted a new petition on behalf of Garcia Solorio under the F2B preference category. This petition was approved on February 20, 1997. (Doc. No. 1-1, Ex. C; ROP at 59.) On July 21, 2008, Garcia-Valdez became a U.S. citizen. (Doc. No. 1-1, Ex. E.) Consequently, Garcia Solorio's status changed to the higher-priority F1 visa preference category. (Doc. No. 1 at 5; ROP at 65.) Assuming Garcia Solorio's priority date was July 22, 1992,[5] her visa status would have been current in August 2008. (*See* Doc. Nos. 1 at 5; 1-1, Ex. H.)

In April 2009, Garcia-Valdez was convicted of a lewd act with a child under the age of 14, in violation of California Penal Code § 288. (*See* Doc. Nos. 1 at 6; 1-1, Ex. K; ROP at 98–101.) On December 27, 2011, USCIS notified Garcia-Valdez of its intent to revoke the previously approved visa petitions because his conviction appeared to constitute a "specified offense against a minor" and thereby subject to 8 U.S.C. § 1154(a)(1)(A). (ROP at 74.) USCIS further provided Garcia-Valdez an opportunity to submit a response prior to the agency's final determination with respect to the previously approved visa petitions. (*Id.*) Garcia-Valdez submitted a response and evidence to support his argument that he posed no risk to the safety of any beneficiary. (*See* ROP at 46.) On September 4, 2012, USCIS revoked the visa petition and issued a written determination finding that Garcia-Valdez had failed to meet his burden of proving beyond a reasonable doubt that he posed no such risk. (ROP at 44–47, 49.) Garcia-Valdez appealed the ruling to the Board of Immigration Appeals ("BIA"). The BIA dismissed the appeal, finding that the no-risk determination was unreviewable under the INA. (ROP at 3–4.)

On July 20, 2015, plaintiff commenced this action challenging the propriety of the administrative determination to revoke her a family-sponsored visa petition as well as the constitutionality of 8 U.S.C. § 1154(a)(1)(A)(viii)(I). (Doc. No. 1.) On March 7, 2016, defendants filed the instant motion to dismiss as to each of the four claims stated in the complaint. (Doc. No. 17.) On March 28, 2016, plaintiff filed her opposition to that motion. (Doc. No. 18.)

---

[5] Plaintiff's F1 status was based on her father's 1996 petition, filed after she turned 21. While plaintiff may have been entitled to an earlier 1992 priority date, she did not file a request to correct it until March 2009. (*See* ROP at 63.)

4

In her opposition, plaintiff agrees to dismissal of two of her claims. (*See id.* at 4, 19.) Thus, only two claims remain pending before the court. First, plaintiff claims that the September 4, 2012 revocation of the visa petition was arbitrary, capricious, and failed to conform to the government's own guidelines, under the Administrative Procedure Act ("APA"). Second, plaintiff claims that the provision of the AWA barring Garcia-Valdez from petitioning for lawful permanent residency on behalf of his family members violates equal protection under the Fourteenth Amendment.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court is permitted to consider material which is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiffs' complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

/////
/////
/////

# DISCUSSION

## A.     Review of Government's No-Risk Determination

Plaintiff first seeks review of USCIS's September 4, 2012 no-risk determination under the APA.  Because that determination is specifically committed to the "sole and unreviewable discretion" of the Secretary of Homeland Security, this court lacks jurisdiction to address plaintiff's claim as it relates to the determination itself.  *See* 8 U.S.C. §§ 1154(a)(1)(A)(viii)(I), § 1252 (a)(2)(B)(ii) ("[N]o court shall have jurisdiction to review . . . any other decision or action of . . . the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of . . . the Secretary of Homeland Security."); 5 U.S.C. § 701(a)(2) (withdrawing jurisdiction to review agency action that "is committed to agency discretion by law"); *see also Reynolds v. Johnson*, 628 F. App'x 497, 498 (9th Cir. 2015) (declining to review a no-risk determination pursuant to § 1154(a)(1)(A)(viii)(I)).[6]  Alternatively, plaintiff appears to attempt to collaterally attack the agency's implementation of § 1154(a)(1)(A)(viii)(I) as being in violation of the APA.  (*See* Doc. No. 18 at 9 (citing *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 491 (1991)).)  However, plaintiff identifies no agency action outside of the September 4, 2012 no-risk determination that would be reviewable under the APA.  Accordingly, this claim is subject to dismissal as well.

## B.     Equal Protection

Second, plaintiff alleges that 8 U.S.C. § 1154(a)(1)(A)(viii)(I) violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  (Doc. No. 1 at 17–22.)[7]  Specifically, plaintiff alleges that the statute irrationally treats adult beneficiaries differently based on whether their U.S.-citizen sponsors have been convicted of "a specified offense against a minor."  (Doc. No. 1 at 20.)

---

[6] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

[7] Defendants also move for summary judgment in its favor as to plaintiff's equal protection claim.  However, because the court need not consider matters outside the pleadings for purposes of this Rule 12(b)(6) motion, it declines to convert defendants' motion into one for summary judgment. *See* Fed. R. Civ. P. 12(d).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). *See also Lee*, 250 F.3d at 686. "[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity." *Heller v. Doe*, 509 U.S. 312, 319 (1993). *See also United States v. Hancock*, 231 F.3d 557, 566 (9th Cir. 2000). Here, because the parties agree that the challenged provision of the AWA implicates neither a suspect class nor a fundamental right (*see* Doc. No. 18 at 14), this highly deferential rational basis standard applies to plaintiff's equal protection challenge. *See Yao v. INS.*, 2 F.3d 317, 321 (9th Cir. 1993).

Under rational basis scrutiny, a statutory classification must be upheld so long as "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). Thus, under this highly deferential standard,

> the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational.

*Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992) (citations omitted). *See also Armour v. City of Indianapolis, Ind.*, 566 U.S. ___, ___, 132 S. Ct. 2073, 2080 (2012). The party challenging the rationality of a legislative classification bears the burden "to negative every conceivable basis which might support it." *Beach*, 508 U.S. at 315 (citing *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)). *See also Heller*, 509 U.S. at 320; *Hernandez-Mancilla v. Holder*, 633 F.3d 1182, 1185 (9th Cir. 2011).

Here, the challenged statute distinguishes between U.S.-citizen or lawful permanent resident *petitioners* for family-sponsored immigration visas who are barred from doing so under § 1154(a)(1)(A)(viii)(I), and those who are not. There are several conceivable bases for such a legislative distinction. As noted above, the AWA is broadly aimed at protecting the public from

7

those convicted of sex offenses and other offenses against children.  Through the AWA, Congress conceivably intended to treat convicted sex offenders differently by presumptively denying them the right to petition for sponsorship of a family member.  Congress could have determined that because convicted sex offenders are more likely to pose a risk of harm to the public generally, including family members, those individuals should be required to make an affirmative showing that they no longer pose such a risk to intended beneficiaries before regaining the right to petition for a family-sponsored visa.[8]  Moreover, such additional scrutiny may reflect congressional intent to provide incentives for those convicted to engage in the rehabilitative process.  Alternatively, the potential denial of a right to petition for family-based immigration may have been intended to deter future criminal conduct.  Because at least one rational basis exists for the challenged classification, plaintiff's equal protection claim must be dismissed.

Plaintiff asks the court to read the legislative classification differently.  She argues instead that the statute distinguishes between *adult beneficiaries* of those barred under § 1154(a)(1)(A)(viii)(I), and adult beneficiaries of those who are not barred.  (*See* Doc. No. 18 at 13.)  Specifically, plaintiff contends her immigration petition was revoked despite the fact that she is an adult being denied admission based on her father's conviction for crimes against a minor.  (*Id.* at 16.)  The statute at issue here, however, makes no distinction among beneficiaries based on age.  Thus, the complaint effectively seeks judicial *creation* of a classification, between adult and minor beneficiaries, where none has been created by Congress.  Such a remedy is unavailable to the court under the Equal Protection Clause.  *See Christian Gospel Church, Inc. v. City & County of San Francisco*, 896 F.2d 1221, 1226 (9th Cir. 1990) ("[A]ny equal protection argument requires the existence of at least two classifications of persons which are treated differently under the law.").  The facts alleged in the complaint, however unfortunate for plaintiff, do not alter the court's conclusion in this regard.

---

[8] This rational basis applies with equal force even if the court were to frame the right of equal protection here as one belonging to *beneficiaries* of petitioners subject to § 1154(a)(1)(A)(viii)(I). While potential beneficiaries are entitled to the benefits of equal protection, Congress retains broad power to regulate their admission.  *An Na Peng v. Holder*, 673 F.3d 1248, 1258 (9th Cir. 2012) (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886) and *United States v. Viramontes-Alvarado*, 149 F.3d 912, 916 (9th Cir.1998)).

**CONCLUSION**

For the reasons stated above,

1. Defendants' motion to dismiss plaintiffs' claims (Doc. No. 17) is granted;
2. This action is dismissed; and
3. The Clerk of the Court is directed to close this action.

IT IS SO ORDERED.

Dated:   **July 7, 2016**                               _____
                                                                        UNITED STATES DISTRICT JUDGE